Final case this morning is 24-6146 United States v. Johnson Thank you, Your Honor. Counsel, may it please the Court, my name is Shira Keeval. I'm an assistant federal public defender and I represent Jonathan Johnson. Mr. Johnson should receive a new trial because the government obtained his conviction for indecent exposure by relying on written BOP disciplinary logs and salacious written POP incident reports, which it offered for their truth even though they were inadmissible hearsay. Rule 803 makes clear, and all circuits to weigh in agree, that the government may not offer records of factual findings of legally authorized investigations or non-ministerial observations of law enforcement personnel in criminal prosecutions just because the records were kept and created in the ordinary course. That's exactly what the government did here. Without calling a single percipient witness to its other acts of evidence, the government offered BOP logs that literally logged the BOP's findings of misconduct and what it called incident reports, which were actually packets that reported the BOP's findings of misconduct, including the allegations of misconduct that the BOP found to be true. That evidence was inadmissible and in its entirety in this prosecution because it was the factual findings of a legally authorized investigation. And the allegation documents themselves were further inadmissible because prison guard accusations of misconduct that they personally observed may not be admitted as hearsay over the hearsay prohibition in a criminal prosecution. Counsel, can I ask you about the evidence in the case? My understanding is the first trial the government sought to introduce the log and then the disciplinary hearing officers report, and then it was in the second trial they changed course and did the log and the incidence reports. Is that right? The labels are correct. So, yes. And in the first, the first trial was kind of bonkers in that the custodian of records was allowed to testify about what these logs were. We can't challenge that because that hung, it ended in a hung jury. But if you look at what happened here, it's true that they took off the final findings, but there were multiple levels that were all part of the administrative findings that were authorized by the CFR. The first was the investigator, and then there was also the original panel that then refers this to the disciplinary officer. So, on some level, they took off the findings of the disciplinary officer, except that those were contained in the logs because that was the final finding. So, I don't know if that answers your question. Well, I'm just trying to get a sense of, you know, what the evidence was that went before the jury. In terms of my review of the record, I guess I was a little unclear about that. And, Your Honor, it's in the supplemental record, Exhibit 9 of the supplemental record, and it looks like, unfortunately, I have the copy here. It doesn't have the page numbers on the copy, but it includes the original allegations typed up and called an incident report. And then for three of the four, it also includes what the committee had to say about it, which is this is very serious warrants consideration for sanctions not available to the UDC, maximum sanctions recommended, and then also the investigation itself that says that it's referring the incident to the UDC. So, those are what went to it, and then the ultimate decision of the disciplinary officer is what's recorded in the log. So, the documents that are in the record are unredacted, and that's how it was presented to the jury? Yes, Your Honor, and there's significant testimony from the custodian of records who went into great pornographic detail about what these allegations were. So, the government here just does not have a theory of admissibility. What it did in this case is completely unique. I don't know, it thought it hacked the system and come up with this new way to introduce allegations of law enforcement officers that's simply not allowed. So, the government points to a kind of judicial carve-out. So, this clearly falls within the plain text of both of the prohibitions in 803-8, and the government says, well, there's this judicial carve-out, and these maybe fall in the judicial carve-out, and they clearly don't. The judicial carve-out is for what are purely ministerial records, and these are very different. These are kind of discretionary reports, subjective perceptions. They're accusing a specific person of specific misconduct. So, if you look at the carve-out cases, those are things like a computer printout of every single car to cross the border, but never has any judge carved out an exception for a border patrol agent who writes down every suspicious car, whether he's doing it for whatever the purpose of what he's doing, if he's anticipating criminal prosecution or not. That just doesn't fall within that limited ministerial exception. Is the 803-8 argument, is it here on plain error review? I don't believe that it is, Your Honor. This was an objection that was more than adequate to alert the district court to the problems with the government's invocation of Rule 803-6. So, if you look at the posture of the case, the government says, we acknowledge this is hearsay, we're going to get it in under 803-6. And then Mr. Johnson replied, as he should have, by saying, we object to that, this is not 803-6 evidence, and that's because the government cannot use 803-6 to admit adversarial BOP incident reports. That's the same argument that we're making on appeal. I think that this is, I don't know if the court wants me to go into why this would be plain, but I think it clearly is. The government can't come up with any legal theory by which this could be admissible. And it also doesn't come up with any facts that were undeveloped in the record or anything that would defeat plain error to show why this would not be a problem. Are there any cases that say it is plain error? So, I mean, I want to just start from everybody knows that the government cannot prosecute people with written law enforcement accusations and written administrative findings. We don't have, you know, securities fraud prosecutions that are proved up with SEC findings. We have live witnesses. This is contrary to the text of Rule 803, which has to be read as whole. The government can't come up with any reading of Rule 803 that allows this. We have 803-6 and 803-8, which are both address, kind of, we allow certain things in for the same reason, which is that they're trustworthy based on the fact that they were created and kept in the ordinary course. And then we have very specific prohibitions that clearly apply to this evidence in 803-8. And what the government's argument is, is we can always escape those prohibitions. We came up with this hack. We can go to 803-6 and we can escape these every single time. There's no limitation to its argument. And no court has accepted it. And there are five circuits that have addressed this issue and all of them have said you cannot escape the specific limitations in 803-8 with general hearsay exception in 803-6. This court, Archuleta and other cases, has said that consensus of the circuits that have reached the question is sufficient to show plain error. So if we're asking if the legal error here is plain, it is. The legal error is going around 803-8's prohibitions by resorting to 803-6. And then there's a question of plainness in the application. Are these plainly, clearly within the prohibitions of 803-8? And they are. The real argument that these disciplinary logs are anything other than an administrative finding, or the other parts of the incident reports, or really any part of this, is something other than an administrative finding. Isn't your argument, at least as far as preservation, practically difficult? Because what we would expect is, I want to introduce these records. Objection, those are not, or why, so just, okay, on what basis? 803-6. And counsel, we object, your honor, these are not proper 803-6 records, blah, blah, blah, blah, blah. And so the judge says, well, I don't know, they seem to fit under 803-6 to me. Well, then we talk a little bit, but nobody ever says, but it violates another rule of evidence, judge, that we just have a more amorphous conversation about how they're not admissible. And then we come up here and we say, well, it was error, because it violated another rule of evidence that we never brought up. It just seemed like, if I'm sitting there as the trial judge, I can tell you it's hard to sit there and have all the different rules going around in your head to where you would necessarily pick up that it's violating another rule at the same time. I don't think this was a perfect objection, but I do think it was sufficient. This happened before trial. There was specific factual arguments that he made of, these are accusatory documents of prison guards, those don't come in under 803-6. And then there was a hearing. He developed those facts. We know exactly what these records are. We know how they were created. We know who created them. We know that they were adversarial. This was developed by both the government and the defense. And when the judge ruled on it, she did not address this argument. So why didn't she address the argument? Was it because she didn't realize it was there, because he didn't say 803-8? I don't think so. I don't know why she didn't address the argument. I mean, if he would have said 803-8, she'd have looked at the rule and it would have probably been pretty apparent. Well, and Your Honor, that's why it's plain error. So I, again, think that we win under either standard of review. I don't want to fight too long about this. Because of that, we don't expect perfection. We don't expect kind of to alert the district court that you cannot use 803-6 to admit accusatory documents from law enforcement officers. That is, I mean, that's law school 101. That absolutely should have triggered in the judge's mind. I've never seen this before. I can't remember this happening. We don't try people with documents. We don't do prosecutions with police reports. The government's argument, it would be allowed to use this in its case in chief. Maybe it wouldn't if it was one incident like this, but imagine that if they prosecuted Mr. Johnson in Louisiana and they'd done it with all four incidents because they wanted to stack what would have been, I think, a misdemeanor sentence down there. And then only two or three of the guards actually showed up. The government easily, on its theory, would have been like, well, we're just going to prove the other ones up with these incident reports. Their theory allows that kind of prosecution. And that's absolutely not we do criminal prosecutions in this country, right? From 10,000 feet away, it's plainly erroneous. From the text of 803, it's plainly erroneous. And from every circuit court that has addressed it, it's plainly erroneous. Counsel, can I ask you about your 404B argument? Absolutely. Your brief says that it's just obvious that Mr. Johnson could not have engaged in the act without having the requisite intent. But the government says, well, we can't take that for granted. We don't know that essentially he's not going to contest intent at trial. And so our theory and Crawford theory for admissibility was to go show these prior acts, show intent, knowledge, and lack of mistake. So was the mens rea sort of contested or how was that presented in terms of the 404B arguments? The mens rea was never contested. It is true that there was some signal that it might be in the submission of a jury instruction. That jury instruction was denied in the first trial as not supported by any evidence. And nothing new had come in at the second trial. If Mr. Johnson had wanted to introduce some evidence of that, he could have. And that would have opened the door potentially to admission of 404B evidence. But the government can't come in and say, well, in this hypothetical universe that we cannot even imagine, where this somehow wasn't an intentional act, a knowing act. This is, I want to make really clear, the Oklahoma statute says willful, but it also defines willfulness to just mean kind of general intent, that you did the act on purpose. There's no requirement of knowledge of the wrongfulness of its cause of conduct, which was something the government did rely on in its 404B notice. The government has never articulated any theory by which this evidence would have made the charge more likely to be true. The only theory anyone ever came up with was the judge who said that under the logic of improbabilities, it probably wasn't a mistake. But the logic of improbabilities doesn't apply in a situation like this. It applies where the government can show the facts are true and somehow miss the ball on mens rea. And that simply could not have happened in this case. The government's argument that like any time mens rea is an element, it could anticipate that maybe there would be an issue and it can introduce 404B evidence, I think is completely wrong. But even if this court were to either accept that or skip over it, that completely defeats their 403 argument. Under 403, under sounding side and would, this court has made very clear that if any relevance is inconsequential to the real issue tried, and it is this type of like emotional prejudicial evidence, it does not come in. They reversed in both cases. 403 is not an insurmountable hurdle. It can be reversed on appeal, and this is exactly the type of case where that should happen. If I may reserve the remainder of my time. Certainly. Thank you. May it please the court, Cedric Bond on behalf of the United States. For the first time in this case and for the first time in this circuit, defendant asks the court to rule that his prison disciplinary records, which were properly admitted under 803-6, should sua sponte have been excluded under 803-8. And because that is not a plain error, this court should reject that argument and affirm the admission of those records under 803-6, which has not been challenged on appeal as to the meeting of the 803-6 elements, which were the emphasis and the sole focus of defendant's challenge to these records below. Wouldn't that argument swallow 803-8? With that, so 803— Under your interpretation of 803-6, isn't it contradicted by 803-8? And under your interpretation, the records, I guess unless there's a successful objection, the records would come in anyway. So 803-8 has a specific role. It has a role, as this court identified in Hayes, or discussed in Hayes, of intended to apply to observations of law enforcement officials at the scene of a crime, an investigation of that crime, and not to matters of routine reports of non-adversarial settings. It is really focused on the case-in-chief evidence of a criminal prosecution. And here we don't have any holding by this court or any other circuit that Bureau of Prisons officers are law enforcement officers as contemplated by the 803-8 exception. That's a—they're in a unique role within the panoply of different kinds of law enforcement within this government. In some states, prison guards are not law enforcement. In the federal system, they are. But in the context of what they do is not investigating crimes. They're there for the safety security of the institution, for the well-being and safekeeping of the facility and the inmates within their population, for the correctional treatment of those inmates, which, as explained in the record at the motions hearing in a trial, was the purpose for this inmate disciplinary proceeding. And that's not ever been established as the kind of adversarial context that is contemplated in the 803-8 case law, as discussed in Hayes or in other contexts that this court has addressed 803-8. And I also know that those kinds of administrative and regulatory proceedings are far closer to the ICE records that this court has allowed to come in, including in the Medrano case, which involved data regarding the facts around apprehension that were observed by the law enforcement officers, Border Patrol and ICE, and allowed those in because they were a part of an administrative and regulatory context and not part of a criminal investigation into this crime, into this conduct that they were addressing there. Counsel, may I ask, is the government's position that BOP officers, correction officers, are not law enforcement personnel for purposes of 803-8? It's not clear to me that they are. That's not been developed. It wasn't developed below. It's not been established by this court. And so, for one part, that makes this not a plain error. And if it were to be resolved, then that doesn't require reversal in this case here. I don't think that they would qualify as law enforcement officers for the purposes because of what Hayes says is the point of this kind of, this exception to the hearsay exception of 803-8. And so, I think that that really makes that a difference here because they have a different role than what is commonly understood as the law enforcement role. Yeah, but isn't one of their roles within the Bureau of Prisons to investigate any incidents, to report them, and then go through a disciplinary process where it has adverse consequences for the inmates? That may not be their primary duty, but it's certainly something that they are tasked with doing. Isn't that right? Certainly. And that is, that's it. It's an administrative and regulatory procedure. Many of the prohibited acts that are involved in that are not crimes. They are necessary to the proper functioning of a facility and the safe keeping of the inmate population and the staff. But what about when they are crimes? You know, here, this offense occurred within the facility, a BOP transfer facility. It was investigated as a crime, as prosecuted as a crime. There's contraband in facilities, crimes under Title 18. So, again, if we're thinking about the duties of a BOP official and whether they're law enforcement personnel, if it is a crime and ends up being prosecuted in a criminal proceeding, would they qualify at that point? I think that what addresses that is, if you look in the testimony in the record, we have different kinds of Bureau of Prisons officers. We have correctional officers who have a mandatory duty to observe and write an incident report under the inmate disciplinary program of conduct that falls outside of the, that meets one of the prohibited acts. And then we have investigators. We had two different kinds of investigators. We had Special Investigative Agent Travis Leisner, who testified. And when there is a criminal, and when the incident report, the administrative report implicates a criminal law, then that goes to the investigators, who then have a, they take over from there. And any of their reports that they made based on their investigations into that would likely fall under this, under this 8038 exception and would not be able to come in because they have a, they have a criminal prosecutorial investigatory role. That's a different role from what the correctional officer has. And I think that that makes a difference in how the court should analyze this, particularly under the plain error review. You analogized to ICE records and to ICE agents, but do we have any cases where BOP records of this nature, incident reports in particular, have been admitted under this hearsay exception? Under 8036 or 8038? Well, either. As they tie together. Okay. So I don't know if, none where the appellate issue has been addressed and resolved that I'm aware of. These were, and that's, that kind of goes to the difficulty in both for the district court in resolving this, where that specific 8038 challenge was not presented to the court. And it also goes to this court's plain error review on that factor as to how that should be resolved. I'll also note that if, unless there's further questions about the 8038 issue, I'd like to point to the 403 balancing, which really is the key issue for the evidentiary challenges in this case. The question is, did the district court, or is this court firmly convinced that the district court made a clear error of judgment or failed to make a permissible choice under the context of these circumstances? And those circumstances were, the 404B evidence was offered, went to an element of the offense. Throughout the trial court proceedings, Mr. Johnson signaled that he intended to challenge this element. The district court gave careful limiting instructions as to this, both before at the beginning of the trial, telling them that they are to, if they're told not to consider something, then they must not discuss it in the deliberation room. And if they do, if they hear something is told to be considered only for a particular purpose, then they must only consider it for that purpose. That was at the beginning, record 283. And then at the end, record at 335, explained the full limiting instruction. And two pages before that, or three pages before that in the record, a limiting instruction that he's only on trial for the crime charged. So the court was very careful in restricting this evidence to how it should be used and made a point of ordering the government to make its point and move on. And the government did just that. At the closing arguments, the government only referenced these prior acts with regards to this, the knowing and willfulness factor. And so those limiting instructions are a necessary part of this 403 balancing. Well, what about the argument Mr. Johnson, I think, puts forward about the testimony that was related to the records and the omission of the records? And then the closing argument where counsel, I believe, referred to the records in calling Mr. Johnson a pervert. You heard recitation that the testimony was pornographic detail. How does that impact our assessment of prejudice? Thank you, Your Honor. That did need to be cleared up. The language that, the adjectives that are being referenced by Mr. Johnson on appeal here, those are, those were not made before the jury. The government did not tell the jury, hey, you should convict this pervert. That was a sentencing advocacy and a proper sentencing advocacy at that. And the reason, the pornographic nature, the conduct that was presented in these 404B prior similar acts were just that. They were prior similar acts. They're not, this is, these were just careful, factual explanations of what the officer there with a duty to report and a duty to do so accurately observed. That's what was seen and that's what was presented to the jury. I'll note that some of the information that was on the back of three of the incident reports regarding the unit disciplinary committee recommendations and some of that, that stuff, it does not appear that was read into the record before the jury. That was then just, those were sent back to the jury room, but those were not harped on. That was not emphasized. What was emphasized and just in a reading it into the record manner was the prior conduct involving the same mental state of masturbating, exposing oneself in front of the officers. And that's what it was used for in the closing arguments. That's how it was used. And I think that what goes to this, the standard of review regarding this, whether we're talking plain error or an abusive discretion, which is a clear abusive discretion for any 403 errors, the first two prongs of plain error are that there'd be an error and that it'd be plain. And so just focusing on that error, whether there's an error, this court is very differential to a district court's balancing. On appeal, Mr. Johnson asked this court to do two things while reviewing the trial court's 403 balancing, both of which are contrary to the precedent of this court. First, Johnson asked this court to really undertake its own balancing or rebalancing of this evidence. And second, to give the 404B evidence its least reasonable probative force and the potential danger of unfair prejudice, its maximal potential danger for prejudice. Both of those are contrary. The first one's contrary to the substantial deference that this court gives to a trial court's 403 balancing, as discussed in Herrera and Cerno and in the Summers case recently. And the second inverts the standard that this court has established and instructed trial courts as to how they should review 404B evidence, and that is that they should take the evidence and give the proposed evidence its maximum reasonable probative force and its minimum reasonable prejudicial value. And that's the standard that they should use, recognizing that excluding evidence that is relevant under 403 is an extraordinary remedy that should be used slightly. And in this case, the district court held a hearing on this. The district court initially excluded the DHO reports, and I think rightly did so, did a careful analysis of that and concluded that those shouldn't come in. And then the district court did a subsequent review of this, of the incident reports, weighed it, and made a careful decision. And I think that the court should defer to that decision on appeal, and I'd ask that the court affirm the conviction and sentence of Mr. Johnson. Thank you, counsel. Could you give her two minutes? Thank you, your honor. The government did not develop this law enforcement officer argument in any way in its briefing, and I'm frankly shocked that they've brought it up today. All police officers wear many hats, and no court has ever asked for Rule 803, which hat was this person wearing at the time. Every court, to ever look at someone who's a sworn law enforcement officer, has held that they are law enforcement officers for this purpose. If you look at Cates, a Fifth Circuit case in our briefing, you know, there's an escape report by a POB guard. That's the report of a law enforcement officer. Another case, U.S. v. Lundstrom, 880 F. 3rd, 423, 8th Circuit, 2018, says Office of Thrift Supervisor Examiners are not law enforcement officers because they are not people who conduct criminal investigations, collect evidence, or bring criminal charges. Every time a POB guard is acting, sure, his goal is to maintain law and order within the prison. Every law enforcement officer has limited jurisdiction, and one of the tools in his belt is to escalate it to criminal charges. Every report that they... So your position is, it's all in, all prison officials are law enforcement? Yes, and certainly BOP guards. The government just admitted they're all sworn law enforcement officers. There's some disagreement on the periphery, say Oates, where they're talking about someone who's not a law enforcement officer. They're saying we have a chemist, and that chemist often does work that's used in criminal prosecutions. There's a disagreement among the circuits about whether that person would count as a law enforcement officer. There is no disagreement. There is no argument. There is no fact that the government could have developed below to somehow escape the idea that these guards were law enforcement officers. Just to clear up the record, the word pervert was used only at sentencing, but the government absolutely said and relied on the fact that these were things, allegations by people who knew that they were used to maintain order and decide if someone was a security threat, and argued in closing that prison guards should not have to be subjected to this behavior. They appealed to the emotions of the jury after citing all of this evidence in closing. Thank you. Thank you, counsel. We appreciate the arguments. That was helpful, and you are excused, and the case is submitted.